UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JUWAN PERRY,

      Defendant.
_____/

Case No.: 13-cr-20670
14-cr-20340
Hon. Gershwin A. Drain

## OPINION AND ORDER FINDING DEFENDANT TO HAVE VIOLATED THE CONDITIONS OF HIS SUPERVISED RELEASE, REVOKING DEFENDANT'S SUPERVISED RELEASE AND IMPOSING SENTENCE

### I. INTRODUCTION AND BACKGROUND

Defendant Juwan Perry pleaded guilty to conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) & 846 and failure to appear after pre-trial release in violation of 18 U.S.C. § 3146(a)(1). This Court sentenced Defendant to a term of 42 months imprisonment on the conspiracy conviction and a term of 18 months imprisonment on the failure to appear conviction, which was to run consecutive to the 42 months imprisonment for the conspiracy conviction. Defendant commenced his 36-month term of supervised release on January 12, 2018.

On May 1, 2019, Defendant's probation officer issued a violation report alleging that Defendant committed the following violations of the terms of his

supervised release: (1) on September 17, 2018, Defendant was ticketed for driving on a suspended license, (2) on March 18, 2019, Defendant broke into his ex-girlfriend's place of employment, (3) Defendant failed to truthfully answer inquiries from his probation officer, and (4) Defendant failed to make any efforts to seek lawful employment. On June 4, 2019, an amended violation report was filed indicating that a warrant had been issued for the conduct alleged in violation 2—including breaking and entering with intent in violation of MICH. COMP. LAWS § 750.110, aggravated stalking in violation of MICH. COMP. LAWS § 750.411i, false report of a felony in violation of MICH. COMP. LAWS § 750.411a, malicious destruction of property in violation of MICH. COMP. LAWS § 750.380(4)(a), and domestic violence in violation of MICH. COMP. LAWS § 750.81(2).

The Court held a supervised release violation hearing on May 8, 2019 and June 6, 2019. At the hearing, the Government called Detroit Police Officers Hassine Mahfouz and Joseph Lennis-Saunders and Detroit Police Sergeant John Stewart.

The Government also subpoenaed Carla Redmond, Defendant's ex-girlfriend, to appear and testify at the hearing. Redmond appeared for the hearing but declined to testify. Redmond indicated that if she were called to testify, she intended to invoke her Fifth Amendment right against self-incrimination. Defendant objected to the introduction of Redmond's hearsay statements through

the testimony of Mahfouz, Lennis-Saunders and Stewart. After considering the parties' arguments and reviewing the relevant authority, the Court engaged in the balancing test required by Rule 32.1(b)(2)(C) of the Federal Rules of Criminal Procedure and determined that the Defendant's interest in confronting Redmond was outweighed by the Government's interest in proceeding with reliable hearsay evidence in light of Redmond's refusal to testify. The Court therefore overruled the Defendant's objection.

Mahfouz testified that he was working on March 18, 2019, when he was directed to respond to a 911 call, made at 3:56 p.m. Mahfouz testified that he listened to the 911 call prior to responding. During the call, Redmond told the operator that her ex-boyfriend, Juwan, was at her place of employment, Liberty Tax, located on Gratiot in Detroit. Redmond told the operator he "busted the windows" and "he's up here right now." While Redmond is speaking with the operator, Defendant can be heard banging louder and louder on the door, shouting at Redmond until glass shatters. When Defendant enters the building, Redmond can be heard yelling and eventually screaming "get away from me" numerous times.

Mahfouz was also shown video footage taken from inside the Liberty Tax building. Glass is seen strewn about the floor. Redmond can be seen pacing inside while carrying a firearm. Mahfouz corroborated that the video footage accurately

depicted the damage done to the building. When Mahfouz arrived on the scene, he spoke with Redmond. He described her as very upset and distraught. She told him that Defendant first used his closed fist to try and break down the door. He went back to his car and returned with a large rock and proceeded to strike it against the door. Even though she had shot the Defendant during the incident, Redmond failed to advise Mahfouz of this fact.

Lennis-Saunders testified that he was also working on March 18, 2019. He was dispatched pursuant to a domestic violence and destruction of property call. He also responded to the scene and spoke with Redmond, who told him her ex-boyfriend had broken the windows at her job. He observed that she appeared distraught and scared. She indicated that a couple of days before Defendant had assaulted her. Lennis-Saunders could still see bruising around her eyes. Redmond likewise failed to mention to Lennis-Saunders that she had shot the Defendant during the incident.

Sergeant Stewart testified that he learned Defendant had been shot and the statements he had given to law enforcement were "sketchy." Ultimately, Stewart was able to connect the shooting with the incident on March 18, 2019 at Liberty Tax. On March 27, 2019, he returned to the store and spoke with Redmond. After he read Redmond her *Miranda* rights, she provided a statement. Redmond indicated in her statement that "Juan [sic] was breaking the windows in front of my

job. Then went to the car and grabbed something and broke the door. Then I ran back to the office and he ran into the building and chased me into the office. I took my gun and pointed at him and fired one shot." Gov. Ex. 4. She stated that she shot at the Defendant because "he was about to beat me." *Id*. She further noted that "he beat me a week before that Wednesday." *Id.*

## II. LAW & ANALYSIS

### A. Hearsay

The Government maintains that it has established by a preponderance of the evidence that Defendant violated the conditions of his supervised release by committing a breaking and entering with intent to commit a felony in violation of MICH. COMP. LAWS § 750.110. The Government further asserts that Defendant committed aggravated stalking in contravention of MICH. COMP. LAWS § 750.411i.[1]

---

[1] The Government also argues that Defendant committed an assault with intent to do great bodily harm. The elements of this offense are:

(1) An attempt or threat with force or violence to do corporal harm to another; and
(2) An intent to do great bodily harm less than murder.

*People v. Parcha*, 227 Mich. App. 236, 238 (1997). "Intent to cause serious harm can be inferred from the defendant's action, including the use of a dangerous weapon or the making of threats." *People v. Stevens*, 306 Mich. App. 620, 629; 858 N.W.2d 98 (2014). "Although actual injury to the victim is not an element of the crime . . . injuries suffered by the victim may also be indicative of a defendant's intent." *Id.* Great bodily harm means any physical injury that could seriously harm the health or function of the body. *See* M. Crim. JI 17.7. While there is sufficient evidence to infer that Defendant intended to assault Redmond once he broke into the building, the Court cannot conclude that the Government

5

Defendant counters that the Government's proof relies heavily on Redmond's out-of-court statements, which are not reliable. Defendant maintains that the Court cannot consider these hearsay statements without violating Defendant's due process rights.

Neither the Federal Rules of Evidence nor the Sixth Amendment applies to supervised release violation hearings. *See* Fed. R. Evid. 1101(d)(3); *United States v. Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005). Hearsay evidence is admissible in revocation hearings as long as it is reliable and "the defendant's need for confrontation is outweighed by the government's ground for not requiring confrontation." *United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998).

While Defendant does not have a Sixth Amendment right to confront adverse witnesses, he does possess a limited confrontation right under Fed. R. Crim. P. 32.1(b)(2)(C), which provides a defendant subject to supervised release revocation "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). The Advisory Committee Notes to Rule 32.1(b)(2)(C) state that a district court must "balance the person's interest in the constitutionality

---

has shown by a preponderance of the evidence that Defendant intended to cause Redmond great bodily harm less than murder.

guaranteed right to confrontation against the government's good cause for denying it."

In this case, the Government subpoenaed Redmond, who appeared at the hearing and declined to testify. The Government therefore did all that it could to secure Redmond's testimony at Defendant's hearing. This establishes good cause. *See United States v. Hall*, 419 F.3d 840, 846 n.4 (9th Cir. 2005) (finding good cause where the government could not locate the domestic violence victim who was homeless and noting "[t]he difficulty of securing the testimony of domestic violence victims … against their batterers is well recognized."); *United States v. Martin*, 382 F.3d 840 (8th Cir. 2004) (concluding the government established good cause for failing to produce domestic violence victim at revocation hearing because she repeatedly stated she would not testify); *United States v. Carthen*, 681 F.3d 94 (2d Cir. 2012)(finding good cause where the victim informed the government attorney on the day of the hearing that she would "risk going to jail if she were called to testify and refused.").

Additionally, the hearsay evidence was reliable in this matter. As an initial matter, Redmond's statements during the 911 call fall under the excited utterance exception to the hearsay rule because they were made contemporaneous with a very stressful event. "[A] statement made while a declarant is under the stress of excitement from a startling incident contains 'inherent guarantees of truthfulness.'"

7

*United States v. Dobson*, 529 F. App'x 536 (6th Cir. Jun. 27, 2013) (citing *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983)); *United States v. Jessie*, 2:13-cr-253, 2015 U.S. Dist. LEXIS 12653, (S.D. Ohio Sept. 22, 2015)(finding statements made during 911 call fell within "excited utterance" exception because the callers were reporting "a traumatic event" which had occurred minutes "before there was time to contrive or misrepresent, while [she was] still in a distraught condition.")

In this case, Redmond was reporting that her ex-boyfriend, Juwan, had come to her place of employment, busted windows and ignored her requests that he leave her alone. Redmond tells the operator that "he is here right now" and loud banging and yelling can be heard in the background. Near the end of the call glass shattering can be heard when Defendant entered the premises. At that point, Redmond frantically repeated and eventually screamed "leave me alone." This was without question an "event startling enough to cause nervous excitement." *Jessie*, 2015 U.S. Dist. LEXIS 126754, at *13-14 (citing *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007)). Moreover, Redmond made the call as the event unfolded, thus, she had no time to misrepresent the truth because she was under the "stress of the excitement caused by the event" in real time. *Id*. at 14.

Redmond's oral statements to Mahfouz and Lennis-Saunders are corroborated by the 911 call. Redmond told Mahfouz and Lennis-Sanders that her

ex-boyfriend, Juwan, had come to her place of employment and busted through the windows. Both statements are consistent with the information Redmond relayed to the 911 operator. Additionally, the video footage, which is non-testimonial, corroborates the damage done to the Liberty Tax building. Glass can be seen strewn on the floor near the entrance of the building. Redmond also told Lennis-Saunders that this was not the first incident with Defendant and that he had beat her up a week ago. Lennis-Saunders observed bruises around her eyes from that incident.

Likewise, Redmond's oral and written statements to Stewart, which were given nine days after the incident, were the same. Redmond again stated that "Juan was breaking the windows in front of my job . . . and broke the door . . . and chased me into the office." She stated that "he was about to beat me" and had "beat[en] me a week before that Wednesday." Thus, Redmond's March 27, 2019 account of what transpired on March 18, 2019 was the same as what Redmond had told Mahfouz and Lennis-Saunders minutes after Defendant left the scene, as well as was consistent with what she had told the 911 operator as the event was ongoing. Because Redmond's statements remained consistent over time and are corroborated by her 911 call and the video footage, the hearsay statements are reliable. *See United States v. Dobson*, 529 F. App'x 536, 539 (6th Cir. Jun. 27, 2013) (multiple consistent statements by victim can be an indication of reliability).

9

Lastly, the Court is required to balance the Defendant's interest in confronting Redmond against the Government's good cause for denying it. *See United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998). The Court has concluded that the Government established good cause for the failure to procure Redmond's testimony at the hearing. Moreover, Redmond's out-of-court statements are reliable, thus Defendant's interest in confrontation is diminished. Balancing these competing interests, the Court finds that the Defendant's interest in confrontation is outweighed by the Government's interest in proceeding with reliable hearsay evidence in light of Redmond's refusal to testify and the Government's inability to secure her highly relevant and important testimony. As such, the interest of justice does not require the appearance of Redmond. *See* Fed. R. Crim. P. 32.1(b)(2)(C).

**B. Violation**

A district court may revoke a defendant's term of supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e). Here, the Government has established that the Defendant violated the condition that he "not commit another federal, state, or local crime" because he committed the crime of breaking and entering with intent to commit and did commit, at the very least, the felony of aggravated stalking.

The elements for establishing a breaking and entering with intent to commit a felony are: (1) the breaking and entering of (2) an occupied dwelling with (3) felonious intent. *People v. Benevides*, 71 Mich. App. 168; 247 N.W.2d 341 (1976).

The crime of aggravated stalking requires proof of "stalking" plus any one of four aggravating circumstances. *See* MICH. COMP. LAWS § 750.411i(2). *People v. Kieronski*, 214 Mich. App. 222, 229; 542 N.W.2d 339 (1995). The aggravating circumstance in this case is established by showing that the actions constituting stalking were in violation of a condition of Defendant's supervised release. *See* MICH. COMP. LAWS §750.411i(3)(b).

Stalking can be established by a showing of a (1) willful (2) course of conduct involving (3) repeated or continuing (4) harassment of another individual (5) that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed or molested, and (6) that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed or molested. MICH. COMP. LAWS § 750.411i(1)(e). Course of conduct is defined as "a pattern of conducted composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MICH. COMP. LAWS § 750.411i(1)(a). Harassment is "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer

emotional distress and that actually causes the victim to suffer emotional distress." MICH. COMP. LAWS § 750.411i(1)(d).  Unconsented contact is "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued.  Unconsented contact includes "[a]pproaching or confronting an individual in a public place or on private property" or "[a]ppearing at that individual's workplace or residence."  MICH. COMP. LAWS § 750.411i(1)(f)(ii)-(iii).

Stewart, Lennis-Saunders and Mahfouz testified as to Redmond's statements about the incident, which are corroborated by the 911 call and the video evidence. Redmond identified Defendant as the perpetrator during the 911 call and in her statements to police. The evidence shows that defendant was yelling and banging on the Liberty Tax building.  He broke the windows and the door and entered the premises even though Redmond was screaming "leave me alone."

Lennis-Saunders and Mahfouz both testified that Redmond appeared distraught, distressed and scared during questioning.  Redmond can be seen pacing back and forth while looking out the windows and holding a firearm.  Redmond was so fearful that she shot Defendant in order to keep him away from her. Lennis-Saunders and Stewart testified they observed bruises on Redmond's face from Defendant's assault a week earlier.

All of this evidence shows by a preponderance of the evidence that Defendant broke into the Liberty Tax building with felonious intent and that he engaged in two separate acts of unconsented contact with Redmond—on March 18, 2019 and a week earlier. Defendant's repeated harassment of Redmond would cause a reasonable person to feel frightened and did cause Redmond to feel frightened. The aggravating circumstance in this case is established because Defendant's stalking was a violation of his supervised release. *See* MICH. COMP. LAWS §750.411i(3)(b).

Defendant maintains that Redmond's out-of-court statements are not reliable because Redmond did not initially tell the police that she shot Defendant during the incident on March 18, 2019. However, Stewart testified that he asked Redmond why she had not informed law enforcement that she shot the Defendant and Redmond responded that she was scared to provide such information. Redmond's failure to admit to shooting the Defendant does not undermine the reliability of her statements, which remained consistent and were corroborated by the 911 call and the video evidence.

### C. Applicable Guideline Range

There are three grades of supervised release violations. *See* U.S.S.G. § 7B1.1. Grade A violations encompass conduct constituting a state offense that is punishable by a term of imprisonment exceeding one year and is (1) a crime of

violence, or (2) a controlled substances offense, or (3) involves possession of a firearm or destructive device. U.S.S.G. §7B1.1(a)(1). Grade B violations include any conduct that constitutes a state offense punishable for a term of imprisonment exceeding one year. U.S.S.G. §7B1.1(a)(2). Grade C violations cover conduct that is a state offense punishable by a term of imprisonment for one year or less or that is a violation of any other condition of supervised release. U.S.S.G. §7B1.1(a)(3).

Here, Defendant has admitted to violations 1, 3 and 4, which are all Grade C violations. *See* U.S.S.G. § 7B1.1(a)(3). Violation 2 will therefore control the punishment analysis because it involves the more serious conduct. *See* U.S.S.G. §7B1.1(b) (where two or more separate violations have occurred, the more (or most) serious violation controls the punishment). At the hearing, neither party definitively stated whether violation 2 would constitute a Grade A or Grade B violation.

In order to qualify as a Grade A violation, the conduct at issue in violation 2 must constitute a felony that is punishable by a term of imprisonment exceeding one year and must be a "crime of violence."[2] U.S.S.G. §7B1.1. A "crime of violence" is defined in § 4B1.2(a) as follows:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

---

[2] There is no dispute that the conduct at issue in violation 2 does not constitute a controlled substances offense nor does it involve possession of a destructive device.

14

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a).

As an initial matter, the Court notes that Amendment 798 to the 2015 edition of the Sentencing Guidelines has amended the definition of "crime of violence" under U.S.S.G. §4B1.2(a). Prior to the Amendment, subsection (a)(2) included in its definition of "crime of violence," the enumerated offense of "burglary of a dwelling." Subsection (a)(2) also defined a "crime of violence" as a crime that "involves the use of explosives, or otherwise involves conduct that presents a potential risk of physical injury to another." *Id.* After Amendment 798, "crime of violence" was redefined and now excludes "burglary of a dwelling" from the enumerated offenses. Additionally, the residual clause "or otherwise involves conduct that presents a potential risk of physical injury to another" has been omitted from subsection (a)(2), which now only includes the enumerated offenses.

In order for the Court to determine whether breaking and entering with intent to commit a felony and whether aggravated stalking can be considered crimes of violence, the Court must "apply the categorical approach[,]" which requires the Court to "look only to the fact of conviction and the statutory

15

definition-not the facts underlying the offense . . . ." *United States v. Wynn*, 579 F.3d 567, 571 (6th Cir. 2009). However, there is an exception to the categorical approach, which occurs when the statutory definition is ambiguous. *Id.* Under this circumstance, the court may look to the indictment, terms of the plea agreement or the transcript of the colloquy between the judge and the defendant in order to properly characterize the offense. *Id.*

"Aggravated stalking consists of the crime of 'stalking,' . . . and the presence of an aggravating circumstance." *People v. Threatt*, 254 Mich. App. 504, 505, 657 N.W.2d 819 (2002). "Stalking" is a "willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MICH. COMP. LAWS § 750.411i. Conduct constitutes harassment if it is "directed toward a victim [and] includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. *Id.* Unconsented contact is defined as "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the

contact be avoided or discontinued.  *Id.*  The aggravating circumstances that establish aggravated stalking include:

> (a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.
> (b) At least 1 of the actions consisting the offense is in violation of a condition of probation, a condition of parole, a condition of pretrial release, or a condition of release on bond pending appeal.
> (c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim.
> (d) The individual has been previously convicted of a violation of this section or [stalking].

MICH. COMP. LAWS § 750.411i(2)(a)-(d).

The Court must determine whether the use, attempted use, or threatened use of physical force against the person of another is an element of aggravated stalking.  Here, there are multiple means by which the statute can be violated.  Only subsection (c) includes the use, attempted use, or threatened use of physical force against another as an essential element of committing the offense.  Credible threat is defined as "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing the threat to reasonably fear for his or her safety or the safety of another individual."  MICH. COMP. LAWS § 750.411i(1)(b).  The remaining subsections—(a), (b) and (d)— do not require the use, attempted use, or threatened use of physical force against another.  Because a conviction under

Michigan's aggravated stalking statute does not necessarily require the use, attempted use, or threatened use of physical force, a violation of Michigan's aggravated stalking statute is not categorically a crime of violence under § 4B1.2.

Because Michigan's statutory definition of aggravated stalking includes conduct constituting a crime of violence, as well as conduct that is of a non-violent nature, the Court may look to the charging document. *Wynn*, 579 F.3d at 571. In this matter, the Court has found Defendant guilty of violating MICH. COMP. LAWS § 750.441i(b), which is conduct constituting stalking while he was serving a term of supervised release. Thus, Defendant's aggravated stalking conduct does not amount to a crime of violence within the meaning of §4B1.2. Therefore, this conduct amounts to a Grade B violation.

As to the breaking and entering with intent to commit a felony, the Court concludes that the conduct representing this violation is also properly characterized as a Grade B violation. Because Amendment 798 removed burglary of a dwelling and the residual clause as part of the definition of "crime of violence" in subsection (a)(2), it appears the only way breaking and entering with intent can be considered a crime of violence is if it includes as an element, the use, attempted use, or threatened use of physical force against the person of another.

The elements for establishing a breaking and entering with intent to commit a felony are: (1) the breaking and entering of (2) an occupied dwelling with (3)

felonious intent. *People v. Benevides*, 71 Mich. App. 168; 247 N.W.2d 341 (1976). These elements do not include the use, attempted use, or threatened use of physical force against the person of another. While there is some aspect of force used for a breaking and entering, it is force against an occupied dwelling rather than the person of another. As such, breaking and entering with intent to commit a felony also constitutes a Grade B violation.

Grade B violations require revocation of supervised release. *See* U.S.S.G. 7B1.3(a). Defendant has a criminal history category of II, thus his guideline range is 6 to 12 months imprisonment. U.S.S.G. § 7B1.4. At a June 21, 2019 sentencing hearing, the Court imposed a 9-month term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553.

### III. CONCLUSION

Accordingly, for the reasons articulated above, the Court finds by a preponderance of the evidence that Defendant violated the mandatory condition that he not commit another state offense. The Court further concludes that Defendant committed the crimes of breaking and entering with intent to commit a felony and aggravated stalking. The Court therefore revokes Defendant's supervised release and imposes a 9-month term of imprisonment.

SO ORDERED.

Dated: June 21, 2019

                                                  s/Gershwin A. Drain
                                                  HON. GERSHWIN A. DRAIN
                                                  United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 21, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager